**Patricia M. DULL, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 18, 2008.

Decided Sept. 4, 2008.

Christine Earl Eaby, Lancaster, for petitioner.

Carol J. Mowery, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

Christopher S. Underhill, Lancaster, for intervenor, New Holland Tire, Inc.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge and BUTLER, Judge.

OPINION BY Judge BUTLER.

Patricia M. Dull (Claimant) petitions this Court for review of the March 21, 2008, Decision and Order of the Unemployment Compensation Board of Review (UCBR) dismissing for untimeliness Claimant's appeal from a Referee's deci-

sion to deny Claimant benefits. Claimant essentially presents three issues for the Court's review: 1) whether there was sufficient evidence that the Referee's decision was actually mailed to Claimant; 2) whether Claimant was competent to file a timely appeal; and 3) whether the UCBR decision and order should be reversed because Bureau of Employment Security procedures make no provision for mental deficiency or illiteracy. For reasons that follow, we affirm the UCBR's decision and order.

After being terminated from her employment with New Holland Tire, Inc., (Employer) for fighting and using racial slurs at work, Claimant filed for unemployment benefits *via* telephone. The Unemployment Compensation Service Center (UCSC) initially granted benefits and the employer appealed. On or about April 19, 2007, despite Claimant's contention that she had not been fighting at work, the Referee denied benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] upon determining that Employer terminated Claimant for willful misconduct. The Referee's Decision/Order indicates on its face that it was mailed to Claimant on April 19, 2007. Under 34 Pa.Code § 101.82, Claimant had 15 days from that date to appeal the Referee's decision to the UCBR. Thus the Referee's Decision/Order listed Claimant's final date to appeal as May 4, 2007. While there is a dispute amongst the parties as to when Claimant filed her appeal, there is no dispute that Claimant filed her appeal no earlier than October 29, 2007, a date well beyond Claimant's appeal period.

Claimant argues that the UCBR should have accepted her appeal despite its un-

---

**1.** Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

timeliness because: 1) there was no proof that the Referee's decision was actually mailed to the Claimant; 2) Claimant is incompetent due to having a first grade reading level and an IQ of 76; and 3) the failure to make provision for mental deficiency or illiteracy constitutes an administrative breakdown that warrants allowance of Claimant's appeal *nunc pro tunc.*[2]

Claimant's arguments are without merit. This Court recently discussed the circumstances under which the UCBR may consider an untimely appeal in *Hessou v. Unemployment Compensation Board of Review,* 942 A.2d 194 (Pa.Cmwlth.2008). There, this Court held:

> [T]he Board may consider an untimely appeal in limited circumstances. The burden to establish the right to have an untimely appeal considered is a heavy one because the statutory time limit established for appeals is mandatory. An appellant may satisfy this heavy burden in one of two ways. First, he can show the administrative authority engaged in fraudulent behavior or manifestly wrongful or negligent conduct. Second, he can show non-negligent conduct beyond his control caused the delay.

*Hessou* at 198 (internal citations omitted).

■ Claimant initially references the "mail box rule," citing cases from the United States Court of Appeals for the 5th and 9th Circuits, to support her argument that there is no evidence that the decision appealed from was mailed, and to suggest that a sworn statement by the mailer is required to establish mailing. Claimant is mistaken as the mailbox rule does not control in this case. In *Gaskins v. Unemployment Compensation Bd. of Review,* 59

Pa.Cmwlth. 213, 429 A.2d 138, 140 (1981), this Court held:

> If there is evidence in the record that the determination of the Bureau was mailed to the claimant's last known address, and that the notice was not returned to the Bureau by the postal officials as undeliverable, then there is a presumption of the regularity of administrative acts of public officials which the referee may invoke in reaching a determination that the claimant did have proper notice.

Here, just as in *Gaskins,* the administrative records indicate that the decision was made and notice thereof sent to Claimant on April 19, 2007. Thus neither the employer nor administrative officials bear the burden of presenting additional affirmative evidence, but the burden falls on Claimant to prove her allegations.

■ Claimant has failed to prove that the decision at issue was not delivered to her address. She testified she is unable to recognize the decision at issue because she is unable to read it. When questioned as to whether she would ask somebody to read documents she received in the mail, Claimant testified, "I do now but I didn't before" because she "was embarrassed [that she] couldn't read." Transcript of Testimony, January 30, 2008 at p. 8. It is clear that Claimant would not have recognized the decision at issue had she received it. Therefore, her testimony that she does not recall receiving the decision is insufficient to satisfy her heavy burden of establishing that the administrative authority neglected to mail the decision, and is insufficient to establish that non-negligent conduct beyond her control caused her delay in filing her appeal. As Claim-

**2.** The Court's review is limited to determining whether Claimant's constitutional rights were violated, whether an error of law was committed, or whether the necessary factual find-

ings are supported by competent evidence. *Sheets v. Unemployment Comp. Bd. of Review,* 708 A.2d 884 (Pa.Cmwlth.1998); 2 Pa.C.S. § 704.

ant's testimony indicates, Claimant could have had someone read her mail had she chosen to do so.

Turning to Claimant's argument that she should be entitled to file a late appeal because she is incompetent due to having a first grade reading level and an IQ of 76, we note that the only unemployment compensation case cited by Claimant on this point is *Cook v. Unemployment Comp. Bd. of Review*, 543 Pa. 381, 671 A.2d 1130 (1996). In *Cook*, our Supreme Court granted an unemployment compensation appeal *nunc pro tunc* where the appellant filed his appeal four days late due to the fact that he had been hospitalized in intensive care following a collapse and there was no evidence that he could have conducted his appeal from his hospital bed. *Cook* is not a case about competency but one of impossibility where the appellant was prevented from appealing due to nonnegligent circumstances beyond his control. The case at bar is not analogous. Here Claimant was prevented by her own negligence from filing a timely appeal because she neglected to have someone read her mail. *Cook* does not compel us to reverse the UCBR's decision in this case.

Finally, Claimant cites *Hessou* and *Lewis v. Unemployment Comp. Bd. of Review*, 814 A.2d 829 (Pa.Cmwlth.2003) in support of her argument that the failure to make provision for Claimant's mental deficiency and illiteracy constituted a breakdown in the administrative system. Claimant quotes *Hessou* for the proposition that *nunc pro tunc* relief may be granted when adequate assistance is not provided to a claimant with cognitive impairment. *Hessou*, however, is not a case which deals with cognitive impairment. In *Hessou*, this Court merely mentioned cognitive impairment, citing *Lewis*, as part of a general statement as to when *nunc pro tunc* relief may be granted. *Lewis*, on the other hand, deals squarely with cognitive impair-

ment. There, this Court remanded for a finding as to whether the failure to give adequate instructions regarding filing an appeal constituted an administrative breakdown given the claimant's level of intellectual functioning. We find the instant case to be significantly distinguishable from *Lewis*.

In *Lewis*, a claimant who suffered from cognitive disorder, learning disorder, spelling disorder, reading disorder, mathematics disorder and a mixed anxiety-depressive disorder, who misspelled her own last name when she gave testimony, filed her appeal only four days late. When questioned as to why her appeal was late she explained that because she was confused by the unemployment forms: she called the unemployment office several times for help; she solicited others for help, going so far as to take her appeal form to her school to solicit help from a teacher; she filled out the form to the best of her ability, then called the unemployment office again to make sure that she filled out the form properly; and she called the unemployment office on the date of her filing to determine whether they would accept her appeal form.

Although the claimant in *Lewis* had the same IQ score as the Claimant in the instant matter, the claimant in *Lewis* made a diligent effort to file her appeal in a timely manner, soliciting help where needed and communicating with the UCSC throughout the process. Here the Claimant exercised no diligence at all, did not communicate with the UCSC regarding her difficulties, and failed to conduct her affairs in a reasonable manner by having someone open and read her mail. This is not something that Claimant was unable to do. Claimant testified she does just that now. But at the time, she did not solicit help with her mail because she was embarrassed and "tried to keep her illiteracy secret." Appellant's Brief at 10. We will

not hold the UCBR or related agencies responsible for accommodating illiteracy where claimants fail to disclose their illiteracy and fail to make reasonable efforts to obtain appropriate assistance.

For these reasons, the order and decision of the UCBR are affirmed.

### ORDER

AND NOW, this 4th day of September, 2008, the order and decision of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.